1

1              IN THE UNITED STATES DISTRICT
         FOR THE WESTERN DISTRICT OF TENNESSEE
2                   WESTERN DIVISION

3    _____

UNITED STATES OF AMERICA,
4
                    Plaintiff,
5
vs.                                NO. 23-20123-TLP
6
EFE EGBOWAWA,
7
                    Defendant.
8    _____

9                      SENTENCING

10                    BEFORE THE

11           HONORABLE THOMAS L. PARKER

12

13                  April 17, 2024

14

15

16

17

18

19       CATHERINE J. PHILLIPS, FAPR, RMR, CMRS
                 OFFICIAL REPORTER
20           FOURTH FLOOR FEDERAL BUILDING
              MEMPHIS, TENNESSEE 38103
21

22

23

24

25

                  UNREDACTED TRANSCRIPT

2

```
 1                A  P  P  E  A  R  A  N  C  E  S

 2

 3

 4

 5        Appearing on behalf of the Plaintiff:

 6             SCOTT SMITH, ESQUIRE
               U.S. Attorney's Office
 7             167 N. Main Street, Suite 800
               Memphis, TN 38103
 8             901.554.4231
               scott.smith@usdoj.gov
 9

10

11        Appearing on behalf of the Defendant:

12             PATRICK STEGALL, ESQUIRE
               Stegall Law Firm
13             22 N. Front Street, Suite 780
               Memphis, TN 38103
14             901.205.9894
               pstegall@stegall-law.com

15

16

17

18

19

20

21

22

23

24

25
```

| 1 | **Wednesday** |
| 2 | **April 17, 2024** |
| 3 | |
| 4 | **The SENTENCING in this case began on this date,** |
| 5 | **Wednesday, April 17, 2024, at 9:32 a.m., when and where** |
| 6 | **evidence was introduced and proceedings were had as follows:** |
| 7 | |
| 8 | **----------------------** |
| 9 | **CASE MANAGER:  All rise.  The United States** |
| 10 | **District Court for the Western District of Tennessee is now** |
| 11 | **in session pursuant to adjournment.  The Honorable Thomas L.** |
| 12 | **Parker presiding.  God save the United States and this** |
| 13 | **Honorable Court.  You may be seated.** |
| 14 | **THE COURT:  This is in the matter of the United** |
| 15 | **States versus Efe Egbowawa.  Mr. Egbowawa is present in the** |
| 16 | **Court with counsel, Mr. Stegall.  Mr. Smith is here for the** |
| 17 | **United States.** |
| 18 | **The Court has reviewed the presentence** |
| 19 | **investigation report, the addendum, the second addendum, and** |
| 20 | **third addendum, along with the sentencing recommendation from** |
| 21 | **the Probation Office.  The Court has also received the** |
| 22 | **position paper of the defendant, the position paper of the** |
| 23 | **Government, and a letter of support from the Egbowawa Family** |
| 24 | **writing on behalf of the defendant.** |
| 25 | **Mr. Stegall, am I overlooking any documents from** |

4

 1 | the defense?

 2 |        MR. STEGALL:  No, Your Honor.

 3 |        THE COURT:  Mr. Smith, am I overlooking any

 4 | documents from the Government?

 5 |        MR. SMITH:  Good morning, Your Honor.  No, you're

 6 | not overlooking anything.

 7 |        THE COURT:  Mr. Stegall, did you and Mr. Egbowawa

 8 | have an opportunity to go over the presentence investigation

 9 | report before today's hearing?

10 |        MR. STEGALL:  We have.

11 |        THE COURT:  All right.  Mr. Egbowawa, did you

12 | have a chance to read the presentence investigation report

13 | and discuss it with your lawyer before today?

14 |        THE DEFENDANT:  Yes.

15 |        THE COURT:  As I reviewed the materials, I did

16 | not see any objections to the facts or the legal conclusions

17 | in the PSR.

18 |        Mr. Stegall, any objections that I overlooked?

19 |        MR. STEGALL:  No.

20 |        THE COURT:  Mr. Smith, any objections to the

21 | facts or the legal conclusions in the PSR?

22 |        MR. SMITH:  No, Your Honor.

23 |        THE COURT:  Well, the Court will then adopt the

24 | presentence investigation report without objection, and finds

25 | that the facts are as stated in the PSR.

1          The defendant begins at an offense level of 31.

2          Mr. Smith, are you asking for the third level

3  reduction for acceptance of responsibility?

4          MR. SMITH:  The Government does so move for the

5  third point.

6          THE COURT:  The Court will grant that request.

7  And the offense level then will go down to a 28.  Criminal

8  history category of one.  This results in a guideline range

9  of 78 to 97 months; supervised release range of one to three

10 years; a fine range of 25,000 to $250,000; a special

11 assessment in the amount of $100.

12         Now, there will certainly be an order for

13 restitution in this case, so I'm not sure exactly what the

14 amount's going to be, but it will certainly be in the

15 hundreds of thousands of dollars.

16         Otherwise, Mr. Stegall, any objection to the

17 calculation so far?

18         MR. STEGALL:  No, Your Honor.

19         THE COURT:  Mr. Smith, any objection to the

20 Court's calculation of the guidelines so far?

21         MR. SMITH:  No, Your Honor.

22         THE COURT:  The next thing I want to talk about

23 is departures.  Within the United States Sentencing

24 Guidelines there are specific grounds for departure within

25 the frame work of the guidelines.

6

1              Mr. Stegall, are you seeking a departure today?

2    Or a variance -- I mean, most people are talking about

3    variances these days.  I just want to make sure the record's

4    clear that we considered departures.

5              MR. STEGALL:  No, not outside the 3553 factors

6    that the Court will consider.

7              THE COURT:  Right.  And we'll talk about those in

8    just a minute.  Okay.

9              MR. STEGALL:  So no.

10             THE COURT:  Mr. Smith, any request for a

11   departure today?

12             MR. SMITH:  No, Your Honor.

13             THE COURT:  Well, the Court agrees with counsel

14   that under the facts of this case a departure within the

15   frame work of the guidelines would be inappropriate.

16             So now we'll turn to the 3553 factors.  After

17   calculating the guidelines and considering departures, the

18   Court will hear argument as it considers the relevant factors

19   set out by Congress at 18 U.S.C., Section 3553(a), to ensure

20   that it imposes a sentence that is sufficient but not greater

21   than necessary to comply with the purposes of sentencing.

22             These purposes include the need for the sentence

23   to reflect the seriousness of the crime, to promote respect

24   for the law, and to provide just punishment for the offense.

25   The sentence should also deter criminal conduct, protect the

UNREDACTED TRANSCRIPT

public from future crime by the defendant, and promote

rehabilitation.

In addition to the guidelines and policy

statements, the Court must consider the nature and

circumstances of the offense, the history and characteristics

of the defendant, the need to avoid unwarranted sentence

disparities among similarly-situated defendants, and the

types of sentences available.

Now, Mr. Stegall, I will turn it over to you to

talk about the 3553 factors.  But I'll also just ask this

question, because as I looked at the plea agreement, the

Government was recommending that the Court sentence the

defendant to no more than 60 months.  And with a guideline

range of 78 to 97 months, just wondering why that is.  So

just know that that's on my mind.  Go ahead.

MR. STEGALL:  Yes, yes, that was the plea

agreement.  He pled guilty to the one count, the money

laundering count, and we were seeking under that a cap of

60 months of sentencing.

Ideally, hopefully, if the Court starts there and

possibly works its way down, the Court can consider the 3553

factors.  You know them well.  I don't really need to

regurgitate them.

But things about Mr. Egbowawa, I mean, he has --

first of all, I mean, he has a good bit of time under his

```
 1    belt already.  He was taken into custody in Georgia in July

 2    of last year, transferred to the Western District here, where

 3    he's been.  He's been in the custody --

 4              THE COURT:  July of 2023?

 5              MR. STEGALL:  Yes.  Yes.  So he's been in

 6    custody, he's been at the Shelby County Corrections Center

 7    this whole time.  Of course, he's dressed in his jail uniform

 8    today.  So he's got, I think, about nine months --

 9              THE DEFENDANT:  Ten.

10              MR. STEGALL:  Okay.  He says ten.  I'm not sure

11    if he actually bonded out for a time when he was in custody

12    in Georgia.  But he -- by the time he got here to the Western

13    District sometime the end of July.  So it's looking like nine

14    to ten months custody he's already got.  And we're asking for

15    a time-served sentence here.  That's a fair amount of time

16    that he has served, and had time to think about his actions.

17              That is a sentence that based on what he did

18    here, the Court can consider that sufficient enough

19    considering the crime.  Now, I know it was a substantial

20    happening here, a lot was going on in this case.  Other

21    people were involved, and it looks like there are people

22    that, you know, have not even been prosecuted, may not even

23    be known.  People not even in the United States who were

24    involved.  This was not a local conspiracy just between a

25    couple of people.  And Mr. Egbowawa was part of that and he
```

UNREDACTED TRANSCRIPT

 1   has accepted responsibility for that.

 2              Obviously there's lot of money at hand here.  And

 3   a lot of people from all over the country who have claimed to

 4   be victimized by this conspiracy that Mr. Egbowawa was a part

 5   of.  And he did -- you know, he did act, it's in the

 6   presentence report, the setting up of bank accounts and a

 7   post office box, and acting as somewhat of a runner or a

 8   mule.

 9              You know, what his involvement was, you know, did

10   he have actual contact with the victims?  I don't know if

11   that's -- you know, that probably would have been a matter to

12   be determined at trial, and how much money he actually had in

13   his hands.  I think the Court can consider it was

14   considerably less than -- it could potentially be millions of

15   dollars.

16              But what is Mr. Egbowawa's actual responsibility

17   here?  I know there's the relevant conduct of the whole

18   conspiracy, but I would like the Court to consider, you know,

19   he was involved in this.  But, you know, he was one of many.

20   And, you know, his role was not -- I know there's an

21   enhancement for him being a leader of this.  It looks like

22   there were several people, at least several people who had

23   that role.

24              Mr. Egbowawa was in Georgia the whole time, and,

25   you know, he did take some actions that I just mentioned,

1    criminal actions to further this conspiracy.

2              But I think the Court can consider what's in the

3    presentence report that -- you know, every one of those

4    dollars doesn't go through him, and he's responsible for his

5    part.

6              Considering that and considering the time that he

7    has served, the time that he's had to sit and think on what

8    he's done, and -- of course, he's got no prior criminal

9    record.  If you look at his background, I mean, he's

10   educated, internationally educated.  Comes to the United

11   States, runs some small businesses.  He has an

12   entrepreneurial spirit.

13             Finally, he has family support.  The Court

14   mentioned the letter that was written on his behalf.  I'm

15   glad that he has those individuals in his life behind him

16   now.  Today, in court, his brother, Mr. Austin, is here.

17   He's sitting in the courtroom.  He has come from Texas.  He

18   lives in Texas.  He has stayed in touch with me throughout

19   this.  And he and his brother are very close, so he's here

20   today in support of Mr. Efe Egbowawa.

21             THE COURT:  As I was reading the letter, I know

22   that Mr. Egbowawa has an eight-year-old son.  And then I read

23   in the PSR that the son is in Lagos, Nigeria.  Is that where

24   the boy is living?

25             THE DEFENDANT:  Yes, sir.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.

2          MR. STEGALL:  So the Court's got a lot to

3    consider.  And it's a complex conspiracy here.  But look at

4    Mr. Egbowawa's role, you know, his little part of that

5    universe and his acceptance of responsibility.

6          He's been here in Shelby County at the

7    corrections center waiting, knowing his day is coming.  It's

8    here today.  He's served some time.  And I know he got -- he

9    did get -- you know, just within the four corners of the plea

10   agreement, for the Government to recommend the cap of no more

11   than 60 months is considerable, considering what he was

12   facing just on this one count, not to say of the five

13   remaining counts in the indictment.

14         But we're asking for a time-served sentence, or

15   something appropriate, based on all of his factors, the

16   nature and characteristics of his background, what he's done

17   in his life, balanced against what he did in this case.  A

18   time-served sentence, or something, you know, bumped up from

19   that a little bit, below the 60 months that the plea

20   agreement's calling for and the 60-month cap.

21         THE COURT:  Are you centering that based on the

22   fact that he has no criminal history and that he's well

23   educated, and that his role in the conspiracy was fairly --

24   was limited?  Is that --

25         MR. STEGALL:  Yes.  And I want to be careful to

```
 1   just say limited.  I know there was an enhancement for him

 2   being a leader and organizer.

 3               THE COURT:  Well, because otherwise, I mean,

 4   Mr. Stegall, I mean, the guidelines put him at seven to eight

 5   years, and you're talking about time served with nine months.

 6               MR. STEGALL:  It's considerable.

 7               THE COURT:  That's a big ask.

 8               MR. STEGALL:  Yes.  Yes.  This defendant has some

 9   things going for him:  His education, his family, and he's

10   had time.  It's been a shock to him.  I mean, he came to the

11   United States to make a life here.  And, like I said, he's

12   got the entrepreneurial spirit, started some businesses.

13   Gets caught up in this, makes some bad decisions, and now

14   he's answering for it.

15               THE COURT:  What businesses did he start?

16               MR. STEGALL:  It was cars.  He was selling cars

17   and --

18               THE DEFENDANT:  Phones.

19               MR. STEGALL:  -- cars and phones and sending the

20   money back to Nigeria.

21               THE DEFENDANT:  I'm not sending money to Nigeria,

22   the cars and the phones.

23               THE COURT:  The cars and the phones were going

24   back.  Okay.

25               All right.  Thank you, Mr. Stegall.
```

1          MR. STEGALL:  Yes.

2          THE COURT:  Mr. Smith, how do you see it?

3          MR. SMITH:  Thank you, Your Honor.  Judge, we

4    come before the Court in sort of an unusual posture, in that

5    we will emphasize some things that cut against Mr. Egbowawa,

6    but we're also going to point out some reasons we think a

7    60-month sentence is the adequate sentence.  That's a below

8    guideline sentence.  So we're asking for 60 months, that's

9    the top of the cap under the plea agreement.

10          First of all, anything less than that is

11   inappropriate.  A time-served sentence is certainly

12   inappropriate in this case.  A lot of victims, a lot of money

13   lost, many of whom are elderly, and many of whom suffered

14   from -- not always, but suffered from romance.  Their

15   introduction to this scheme was a romance scam.

16          And in romance scams, not only do you lose your

17   money, but your heart gets ripped out.  And for a lot of

18   victims, it's a very real relationship, this online

19   relationship, a very loving relationship.  So this is a

20   heinous crime.  What he has done, Mr. Egbowawa's contribution

21   is reprehensible.

22          What I'll say, though, there are several things I

23   think that cut in his favor, for which a 60-month sentence is

24   appropriate.  For one, he is a first-time offender, or at

25   least he has no criminal history.  He came to us and agreed

1    to plead guilty, accepted responsibility, within a deadline

2    that the Government imposed to accept a plea agreement.  So

3    he abided by that and accepted responsibility.

4            And that puts pressure on all the other members

5    of the conspiracy that were charged.  So that's a -- for the

6    Government, that is a major win, and that helps a lot in

7    terms of conservation of resources, not only of the Court's

8    resources, the Government's resources, but also the dozens of

9    victims that we're talking to and witnesses that we're

10   talking to from across the country, for whom it is arduous in

11   some cases, to travel cross country to do trial prep, to stay

12   somewhere.  And so a lot of that goes away when you have

13   someone like Mr. Egbowawa coming and accepting

14   responsibility.  And that's definitely something to the good.

15           Another thing in these kinds of schemes, the

16   victims, I think in many cases, never dream that they're

17   going to get a call from an FBI agent, talk to a prosecutor,

18   have any kind of process in a court of law that's going to

19   result in some justice.  They just think that that's just a

20   remote possibility, perhaps never going to happen.  And that

21   is happening in this case.  And he's part of the reason --

22   he's first one before Your Honor to be sentenced.  He's part

23   of the reason -- his willingness to accept responsibility and

24   come before the Court is part of the reason we can bring

25   justice to many of those victims today.

1         And then there's closure when you have a plea

2    agreement with appeal waivers.  These are standard appeal

3    waivers, but there is an important level of closure for both

4    the Government and for the victims when you have these appeal

5    waivers.

6         So for all those reasons, looking at the

7    guidelines, looking at the things that cut against him, cut

8    in favor, we are requesting that the Court sentence him to

9    60 months in confinement.

10         One last factor, Judge, I don't know if this is

11    on your horizon.  He was here as a lawful permanent resident.

12    When this offense was committed, he was still -- that status

13    was still a provisional status.  It was in limbo, in other

14    words, and that has been revoked.  He will be deported.  At

15    the termination of his sentence here, he'll be deported to

16    Nigeria.  So that's one other thing, I think, that makes this

17    60-month sentence that we're asking for acceptable.

18         THE COURT:  Mr. Smith, were any of the victims

19    going to be -- I've read what they've written.  But any

20    victims here to testify?

21         MR. SMITH:  None are here.  We spoke with many,

22    and they preferred to send something in.  Now, the one victim

23    that we did want to be here, that was our local victim, she

24    passed away some weeks ago.  And we've been in touch, of

25    course, with her son.  Maybe when we speak about restitution

1    a little later, we'll talk a little more about her.  But none

2    to be here today.

3              THE COURT:  Okay.  Mr. Egbowawa, you are given an

4    opportunity to address the Court.  You can tell me anything

5    you think I need to know before I pronounce the sentence.  I

6    would -- if you want to be heard, please stand and I'll hear

7    from you.

8              THE DEFENDANT:  Your Honor, I really want to hear

9    from you, because I really don't understand this whole

10   process, how it works.  I have read all the statements of

11   these victims.  In all the statements of these victims, none

12   of them said whoever they communicate with steal money for

13   him.  But all of them are saying, whoever they communicate

14   with told them he had a problem with his business, that he

15   needs his field team to borrow him money, which --

16             THE COURT:  All right, hang on.  Mr. Egbowawa, I

17   want to give you a chance to be heard, and I want to

18   understand what you're saying.

19             THE DEFENDANT:  Okay, sir.

20             THE COURT:  It might be better if he were

21   standing directly in front at this podium.  No, the one

22   directly in front of the bench here.  Come this way,

23   Mr. Egbowawa.

24             Mr. Stegall, if you want to join him at the

25   podium here.  There you go.  Right here, sir.  And the gray

1     bar right that's right there is a microphone.  So if you'll

2     just go ahead and start talking.  Right here.  There you go.

3             THE DEFENDANT:  Okay, sir.  I will repeat myself

4     again.  I said, I'm not understanding any of this whole

5     situation, and I really need to hear from you.  I've read all

6     the statements of the victims.  Not one of the victims said

7     whoever they communicate with steal money from them.  But

8     each and every one of these victims said, whoever they

9     communicate with told them he have problem with his business

10    and he needs this field team to borrow him money.

11             Your Honor, please, I would like to be corrected

12    if I'm wrong.  I believe there's big difference between when

13    you steal money and when you borrow money.  To my own

14    understanding, and please correct me if I'm wrong, if you

15    steal money, it is a crime.  When you borrow money, to my own

16    understanding, it is a debt.

17             Like I was telling my lawyers, I'm not a man that

18    can run away from my responsibility.  I did not borrow this

19    money from these victims, which the FBI agent knows as well.

20    If I did borrow this money, I'm not going to run away from my

21    responsibility, because it is a debt.

22             I would simply say, Your Honor --

23             THE COURT:  So what did you do with the money?

24             THE DEFENDANT:  I normally buy cars --

25             THE COURT:  No, the money that you went to the

1    post office box and picked up, what did you do with it?

2                    THE DEFENDANT:  Your Honor, I was instructed -- I

3    normally buy items.  And I was instructed to pay for the

4    vehicle.  Which I bought a vehicle and I paid for a vehicle.

5                    THE COURT:  A what?  A vehicle?

6                    THE DEFENDANT:  Yes, a motor.

7              So if I did borrow this money from these victims,

8    I would definitely say, Your Honor, yes, I did borrow this

9    money.  Yes, I will not be able to pay.  I did something bad

10   because I invested money in the wrong business, that's why

11   I'm not able to pay.

12                    But I would say, Your Honor, to them in order to

13   make my restitution, I want to start paying this money.  I

14   can write a check of a thousand dollars.  As long as I'm in

15   this country working, every month I will be willing to pay.

16                    But, Your Honor --

17                    THE COURT:  So when the money was sent to your

18   post office box, did the victims know that you were going to

19   go buy a car with it?

20                    THE DEFENDANT:  I didn't --

21                    THE COURT:  I don't think so, did they?  I don't

22   think so, Mr. Egbowawa.  In fact, I think you know they

23   didn't.

24                    THE DEFENDANT:  Your Honor, I never

25   communicate --

```
1              THE COURT:  That's called false pretenses.

2              THE DEFENDANT:  Your Honor, I never communicate

3    with these victims.  Whoever borrowed this money --

4              THE COURT:  Okay.

5              THE DEFENDANT:  -- from these victims --

6              THE COURT:  Okay.

7              THE DEFENDANT:  -- I don't even know if he is

8    black or if he is white.  I never communicate with this

9    person, which the FBI knows that whoever is the handler,

10   which -- whoever is the handler, which communicate with these

11   victims, I have no relationship with this person.  I've never

12   communicate with this person --

13             THE COURT:  You have plausible deniability is

14   what you're saying; is that right?  Is that what I'm hearing?

15             THE DEFENDANT:  It is what it is, Your Honor.  I

16   never communicate with this person to know his intention that

17   he borrowed money -- that is borrowing money for someone,

18   which I did not know about.  I didn't know about it.  I was

19   told they want to purchase vehicles, and that is what I'm

20   doing for them.

21             MR. STEGALL:  May I talk to Mr. Egbowawa for a

22   minute?

23             THE COURT:  Yes, sir.

24             (Off-the-record discussion between defense

25   counsel and defendant.)
```

UNREDACTED TRANSCRIPT

1          **THE DEFENDANT:  Your Honor, what I'm trying to**

2   **bring up again is the total lost amount of money.  When you**

3   **look at the indictment, the total amount of money is now up**

4   **to 300,000.  This idea is of the prosecutor.  They just**

5   **assume that all these things -- these kind of things are**

6   **happening.  They print out all my bank statements that I**

7   **opened in this country since 2017 to date.  And they are**

8   **calculating the whole money as a loss.  And this money is my**

9   **business money.  Why you calculate that amount?  It increase**

10  **to 1.5 million.**

11         **And they are trying to put me like a gang member**

12  **or a leader or something.  How am I a leader of something**

13  **what happened with two others?  How am I leader?  They're**

14  **trying to say -- you are charging me with people that don't**

15  **know about the source of the money.  Why are you charging me**

16  **with people that don't know about the source if no one knows**

17  **that.**

18         **Someone is out there communicating with someone**

19  **on the internet and telling the person, I need you to borrow**

20  **money.  Which is practically impossible.**

21         **THE COURT:  Mr. Egbowawa, we went through a**

22  **hearing in which you entered a guilty plea to the charge in**

23  **this case.  And we talked all about the plea agreement, we**

24  **talked all about the fact that you knew what the charges**

25  **were, you knew what the factual basis was, and you agreed to**

1    plead guilty.

2              Today is sounds like you're rethinking -- I don't

3    know, is this revisionist history?  What are we doing here?

4              THE DEFENDANT:  Your Honor --

5              THE COURT:  Have you decided that, you know,

6    maybe you saw the numbers and that scared you?  I don't know

7    what's going on here.  But you sat right in that chair, right

8    over there, and looked me in the eye and said, I'm guilty.

9              THE DEFENDANT:  Yes, I did say so, because of

10   what my lawyer said, it's best you just plead guilty, and

11   there's a possibility we can fight for time served.  But I'm

12   seeing that's not -- I don't see any reason why because of a

13   debt, you are trying to destroy my life.

14             Whoever borrowed this money, deposited this

15   money, it is a debt.  And if they are going to put it on me,

16   fine, they should put it on.  It's going to be a debt that I

17   will pay for the rest of my life, but not destroying my life

18   by putting me in jail, to make me suffer and my family to

19   suffer.

20             THE COURT:  Mr. Egbowawa, did you read the

21   presentence investigation report?

22             THE DEFENDANT:  I did read the presentence

23   report.

24             THE COURT:  Did you read about how those victims

25   gave hundreds of thousands of dollars to this group, because

```
 1    they thought that someone needed help who was working at an

 2    oil rig somewhere or needed help with their business?  They

 3    didn't say, oh, you've got a buddy in Georgia who's going to

 4    go buy a car.

 5              THE DEFENDANT:  No.

 6              THE COURT:  No, they didn't know that,

 7    Mr. Egbowawa, did they?

 8              THE DEFENDANT:  They did not know that.  They

 9    didn't tell me that as well.  This is a misunderstanding --

10              THE COURT:  So everybody's just out here kind of

11    in a vacuum, and just, you know, I'm going to fake a name.

12    I'm going to put a bogus name on a post office box, because

13    dude out here in who knows where said, hey, I'm going to

14    borrow some money from people, but don't put your real name

15    on it, because it's all legit.

16              Is that what you're telling me?

17              THE DEFENDANT:  Your Honor, that I have a fake

18    passport or ID does not mean --

19              THE COURT:  All right.  That -- you know what,

20    Mr. Egbowawa, tell me what you're going tell me and we'll

21    move on.  Let's just go.

22              THE DEFENDANT:  What I'm trying to tell you is

23    this, that the total amount of money is not correct.

24              THE COURT:  Okay.

25              THE DEFENDANT:  Two, I'm not [indiscernible] nice
```

people and put some money in their account.  I am not part of

those things.  Whatever I did, I did on my own.  I did not

deal with anybody.  And not that there's any evidence to tie

me to that.

THE COURT:  So money just landed in this post

office box by magic?

THE DEFENDANT:  Let me explain --

THE COURT:  Are you telling me that you didn't

have anything to do --

THE DEFENDANT:  Okay.  Let me explain something

to you.  You're not understanding, Your Honor.

THE COURT:  No, you're right, I don't understand.

THE DEFENDANT:  Yeah, let me explain to you.

Whoever is the handler, which is the person talking to these

victims --

THE COURT:  All right.  Tell me what a handler

is.  A handler is somebody --

THE DEFENDANT:  According to the FBI, a handler

is the person that's --

THE COURT:  Who's actually in communication with

the victim.

THE DEFENDANT:  -- communicating with the victim.

He told the victim that I am your agent.

THE COURT:  He told the victim what?

THE DEFENDANT:  That I'm their agent to receive

```
 1    money.  But they told me they wanted to purchase an item,

 2    which is vehicles and these other phones I'm purchasing.

 3    That's where the big problem coming from.

 4              THE COURT:  Okay.  But you didn't think, well,

 5    wait a minute, why don't I just get a post office box in my

 6    name then?  I'm Efe Egbowawa.  I'm here legally --

 7              THE DEFENDANT:  Your Honor, when I came --

 8              THE COURT:  -- I've got no problem.  I'm a

 9    businessman.  I can just set up the post office box in my

10    name and it's no big deal.

11              And the reason you didn't do that, Mr. Egbowawa,

12    is you knew those guys were scamming, and you knew that money

13    was fraudulent.

14              THE DEFENDANT:  Your Honor, the reason why --

15              THE COURT:  That's why you pled guilty in this

16    case.

17              THE DEFENDANT:  The reason why I have the fake ID

18    was because when I came to this country I was made to

19    understand you cannot do business or work when you're on a

20    visiting visa.  That is the main reason I got the ID.

21              THE COURT:  I think we should probably just take

22    a short break, Mr. Stegall, and you can chat with

23    Mr. Egbowawa and we'll see where we are.  Okay?

24              MR. STEGALL:  Okay.

25              THE COURT:  So I'll come back in about ten or
```

```
 1   15 minutes.

 2               CASE MANAGER:  All rise.  This Honorable Court

 3   now stands in recess.

 4     (Recess was had at 10:07 a.m. and resumed at 10:22 a.m.)

 5               THE COURT:  Mr. Stegall, did you have a chance to

 6   talk to Mr. Egbowawa?

 7               MR. STEGALL:  I did.

 8               THE COURT:  Are we prepared to proceed?

 9               MR. STEGALL:  Yes.  Do you want -- well --

10               THE DEFENDANT:  I don't want to say anything that

11   will offend anybody, so I have nothing else to say.

12               MR. STEGALL:  He advises he has nothing else to

13   say as far as his elocution.

14               THE COURT:  All right.  Mr. Egbowawa, you know,

15   the Court gave you an opportunity to say what you wanted to

16   say.  But at this point you've decided to stop; is that

17   right?

18               THE DEFENDANT:  I don't want to get anyone

19   offended to explaining my own opinions.  So I just have to

20   deal with my fate in the hands of God and let His will be

21   done.

22               THE COURT:  Well, I'm not cutting you off.  I

23   just want to make sure the record's clear that I'm not

24   stopping you from speaking.  You've chosen to stop speaking;

25   is that right?
```

1          THE DEFENDANT:  Okay.  I just want to make sure

2    and put on points, that I don't see any reasoning why they

3    are inflating the amount to 1.5 million.  Because basically

4    what they just did, you printed my bank statements from 2017

5    to date and you --

6          THE COURT:  Took every dime that went

7    through there --

8          THE DEFENDANT:  Yes, every --

9          THE COURT:  -- and added it up --

10          THE DEFENDANT:  And they are calculating that as

11    the loss.  Which, to me, I don't think that is fair for me.

12          THE COURT:  Okay.

13          THE DEFENDANT:  Two, I don't see any reason why

14    they are trying to put like I'm a leader.  A leader of what?

15          THE COURT:  Okay.

16          THE DEFENDANT:  That part, I don't understand.

17          THE COURT:  Okay.  Anything else?

18          THE DEFENDANT:  Nothing else, no.

19          THE COURT:  All right.

20          THE DEFENDANT:  I want to say, I'm really sorry,

21    deeply sorry from my heart for any loss of these victims that

22    suffered.  I know in my heart I did not willingly participate

23    in this.  I've been used in this whole process.  I did not

24    know or willingly participate in this.  I'm deeply sorry for

25    any loss anyone suffered as a result of this whole thing.  I

1   am deeply sorry.

2                   THE COURT:  Okay.  All right.

3                   THE DEFENDANT:  Thank you, sir.

4                   THE COURT:  Why don't -- before I decide the

5   sentence, why don't we talk about restitution.

6                   Mr. Smith, how do you see it?

7                   MR. SMITH:  Judge, of course I disagree with

8   Mr. Egbowawa's characterization of how we've calculated

9   restitution.  Or how restitution would have been --

10                  THE COURT:  It didn't make sense to me, based on

11  what I've read.

12                  MR. SMITH:  And that's not how we're calculating

13  things.  But what I would say is that we are still trying to

14  determine the right number.  I think as recently as yesterday

15  we received a response from one of the victims.  I confirmed

16  that with Ms. Roberts a little earlier today.

17                  And, unfortunately, we just don't have a good

18  grasp, at this time, on what that number should be.  What I'm

19  going to ask for is a period of time.  I think under rules we

20  have up to 90 days, to leave restitution open, and do a

21  little more work on that.

22                  I mentioned Hildegard Waldorf, one of the victims

23  earlier.  She recently deceased, and we are working through

24  her son on how to best address the claim for restitution.

25  Her amount is going to be in the neighborhood of 400,000, so

1    it's important to get that right.  And so for those various

2    reasons, I think we need to leave it open for a little while.

3                THE COURT:  Well, of course the rules allow us to

4    do that.  As I was looking at the various addendums, the most

5    recent one I think had the number somewhere in the $400,000

6    range.

7                And, Mr. Smith, maybe you can correct me if I'm

8    wrong, but what -- the amount of loss that is set forth in

9    the guidelines is based on the activity of the group, and the

10   multiple victims from all over the country who are

11   contributing money toward this scam, and the amount of loss

12   there may or may not be the same amount that is ordered for

13   restitution.  Sometimes it is, sometimes it's not.  In this

14   case, it may be a different number.  Am I right about that?

15               MR. SMITH:  Yes, Your Honor.  And I'm going to

16   turn to make sure I'm looking at the right paragraph.

17               The number 1.6 million is mentioned in the PSR.

18               THE COURT:  It's in paragraph 48, page 14.  It's

19   the second bullet point under paragraph 48.

20               MR. SMITH:  Yes, Your Honor.  Loss amount of

21   1.6 million.  That is based on the little over 400,000 that

22   we know came from Hildegard Waldorf, and that it is also

23   based on wires that went into the accounts of Mr. Egbowawa.

24               And then we are adding to that some of the

25   victims who sent cash in the mail, but not all of them.  We

1    don't know how much some of them sent.  Most of them we don't

2    know how much they sent, and so that's where that number

3    comes from.  The conspiracy number is larger, but that's

4    where the 1.6 comes from.

5            THE COURT:  Okay.  Well, Mr. Stegall, do you want

6    to be heard on the question of restitution?  I mean, I'm

7    inclined to leave the question open for 90 days, and we can

8    come back.  If we need to have a hearing on it, we can.  But,

9    otherwise, maybe the lawyers can agree to an amount.  But

10    either way, we'll put it off for 90 days.

11            MR. STEGALL:  That's fine.

12            THE COURT:  Okay.

13            MR. STEGALL:  And I don't have anything else --

14    I'll have to look at it and maybe talk with Mr. Smith and see

15    what we can agree on.

16            THE COURT:  Okay.  Well, so Mr. Egbowawa tried

17    pretty hard to talk me out of giving him credit for

18    acceptance of responsibility.  I'm not going to take him up

19    on that.

20            MR. STEGALL:  Thank you.

21            THE COURT:  You know, Mr. Egbowawa's 40 years

22    old.  He has a master's degree.  And instead of operating a

23    legitimate business, he joined a group of people who lied for

24    a living.  That's what they did.  They went to vulnerable

25    people and convinced them that they were in love with them,

1 | and then pulled a bait and switch and got them to contribute

2 | money toward some emergency that had they would concoct and

3 | come up with.

4 | And for Mr. Egbowawa to try to say that all he

5 | was doing was doing his normal vehicle business, in a fake

6 | name, in bank accounts under fake names, is laughable.  It is

7 | laughable.  And what is happening here is that Mr. Egbowawa

8 | believes very deeply that he is a good person, and that he

9 | wouldn't do anything that would justify the Court sentencing

10 | him to anything more than time served.

11 | He has a family.  He loves his children.  All of

12 | that can be true, and he can still be part of a group that

13 | lies for a living.  Drug dealers love their children.  Okay.

14 | Oftentimes murderers love their families.  It happens.

15 | People do things that are different from, you know, loving

16 | their families.

17 | So this case, Mr. Smith, you used the word

18 | heinous, and it is.  These are -- these victims are often

19 | lonely, they're vulnerable, they're elderly, and they're

20 | looking for someone to care.  And along comes this group and

21 | they contact them, and they lead them right down the primrose

22 | path.  And here we have a lady, Ms. Waldorf, who contributes

23 | $400,000 thinking that she's in love.  And it's horrendous.

24 | It's manipulative beyond belief.

25 | And Mr. Egbowawa, perhaps he was used, and that's

1    the only reason that I can think of to limit this to anything

2    below the guidelines, is the fact that maybe they put him on

3    a shelf and they said, hey, look, we're going to do our

4    thing, you do your thing, and we'll -- you know, you don't

5    need to know much more.  Maybe.  I'm not naive, but

6    Mr. Egbowawa sounds very naive to me, to the point of maybe

7    he was used in this process.

8            It was an elaborate scheme.  There were lots of

9    people involved, and everybody in this group was lying

10   through their teeth.  And to suggest that that's not stealing

11   is a joke.

12           So the case is serious, it's reprehensible, and

13   the Court needs to take that seriously.  The Court also needs

14   to promote respect for the law, and the law includes telling

15   the truth.  That's a very basic component to lawful activity.

16           That's not the only thing the Court looks at.

17   The Court also looks at the fact that the defendant has no

18   criminal history.  He's 40 years old.  He's well educated.

19   He has a lot of talent.  It's terribly unfortunate that he

20   chose this path.  This group is just -- it's full of, you

21   know, old-fashioned con artists.  And that's what this is.

22           He has a child in Nigeria that he cares about,

23   and his son cares about him.  But when I was reading the

24   letter from the family, his family, about what a big loss it

25   is that he's not able to participate in his son's life --

first of all, I thought, well, he probably should have

thought about that before he started lying about what he was

doing.  But I also thought about the victims in this case,

and what they have lost as a result of all this lying.

I have no doubt that Mr. Egbowawa cares about his

son and that he is going to miss him, and that his son is

going to miss his dad.  But I'm not the one doing that to his

son.  Mr. Egbowawa is responsible for that.

We do need to figure out what the restitution's

going to be.  The Court is going to follow the recommendation

that the lawyers came up with, and I'm going to cap this

sentence.  As much as I would like to go above it, I'm going

to cap it at 60 months.  I think Mr. Egbowawa earned every

minute of that in this case.  And so the Court is going to --

I'm going to sentence him to 60 months incarceration.  It's

going to protect the public.  It's going to deter criminal

conduct.  It does -- it is a serious offense.  It is a just

punishment under the circumstances.

And so in determining what sentence to impose, I

have considered the presentence investigation report as well

as the other documents in this case, and the positions taken

by the parties.

Mr. Smith, were there other counts that are going

to be dismissed today?

MR. SMITH:  Yes, Your Honor.  The remaining

1   counts of the indictment as to Mr. Egbowawa, I move to

2   dismiss those at this time.

3           THE COURT:  I'm not -- do you know which ones

4   they are?  Let me look real quick.

5           CASE MANAGER:  Judge, I show one through five.

6           THE COURT:  One through five?

7           CASE MANAGER:  Yes, sir.

8           MR. SMITH:  Yes, Your Honor.

9           THE COURT:  Okay.  The Court finds that the

10  dismissal of Counts 1 through 5 will not undermine the

11  statutory purposes of sentencing or the sentencing guidelines

12  in this case.  The remaining charges adequately reflect the

13  seriousness of the offense behavior.  And I accept the terms

14  of the plea agreement in that regard.

15          Mr. Egbowawa, based on the 3553 factors that I've

16  been talking about, and the lawyers have been talking about,

17  as well as the advisory sentencing guidelines, I am going to

18  sentence you to a period of 60 months imprisonment, which is

19  below the guideline range.  And the reason I'm going below

20  the guideline range is because you're 40-years old without a

21  criminal history, you do have other talents, and the Court is

22  concerned about restitution.  And I want to make sure that

23  you get out of prison in time to contribute toward the

24  restitution for these victims.  And if it lasts the rest of

25  your life, so be it.  So we'll come back in 90 days for

1    restitution, to determine the amount of restitution.

2              The Court is also going to order -- even though I

3    understand there is going to be a deportation proceeding,

4    which this Court has nothing do with that, just to be clear.

5    I hope Mr. Egbowawa understands that.  This Court has nothing

6    to do with immigration questions.

7              MR. STEGALL:  We've discussed that a lot, him and

8    me.

9              THE COURT:  But in terms of supervised release,

10   recognizing that he's going to be removed, Madam Probation

11   Officer, I think I should still order supervised release;

12   right?

13             PROBATION OFFICER:  Yes, Your Honor.  And that's

14   just in case something happens and he does get out, he knows

15   to come and report.

16             THE COURT:  Okay.  So the Court is going to order

17   three years of supervised release, with these conditions:

18   That the defendant cooperate in the collection of DNA; that

19   he participate in third-party risk notification; that he

20   provide the probation office with access to all of his

21   financial information.  The defendant is also ordered -- the

22   order will be that he not open any lines of credit without

23   officer approval ahead of time.  The defendant is also

24   ordered to undergo mental health counseling as directed by

25   the probation office.

1           The other conditions also apply, and those are

2    that the defendant will not commit another federal, state, or

3    local crime; he is not to possess any illegal controlled

4    substances; and he's not to possess any firearms.

5           Now, in terms of restitution, the Court is

6    leaving that question open for 90 days.

7           Any objections, Mr. Stegall, to the sentence as

8    outlined?

9           MR. STEGALL:  No objections.

10           THE COURT:  Mr. Smith, any objections?

11           MR. SMITH:  No objections.  Thank you.

12           THE COURT:  Is there a location, Mr. Stegall,

13    that you would prefer Mr. Egbowawa, where he should serve the

14    sentence?

15           MR. STEGALL:  His brother, who I mentioned is

16    here, lives in the Dallas, Texas, area.  I believe

17    Mr. Egbowawa has other family.  And so if the Court could

18    make a recommendation around the Dallas area, we'd appreciate

19    that.

20           THE COURT:  All right.  The Court will make the

21    recommendation that the defendant be housed as close to

22    Dallas, Texas, as possible.

23           Now, Mr. Egbowawa, there apparently is a detainer

24    that is in place from the immigration authorities, so that

25    when you're finished with your sentence, you would be

1    transferred to the immigration authorities.

2              But if that doesn't happen for some reason, upon

3    release from imprisonment, you are ordered to serve

4    supervised release for a term of three years.  And within

5    72 hours of release from the custody of the Bureau of

6    Prisons, you are to report in person to the probation office

7    in the district in which you are released.

8              It is further ordered that the defendant will pay

9    the special assessment in the amount of $100, which is due

10   immediately.

11             Now, Mr. Egbowawa, you do have the right to

12   appeal.  But that right to appeal can be waived.  I believe

13   your plea agreement includes an appeal waiver, which is

14   usually enforced by the Sixth Circuit.  But if you would like

15   to file a notice of appeal, you need to do it within 14 days

16   of the entry of the judgment, or within 14 days of the

17   Government's appeal.  If requested, the clerk will prepare

18   and file a notice of appeal on your behalf.  If you cannot

19   afford the cost of an appeal or counsel, you can seek to

20   appeal in forma pauperis, which means you can apply to have

21   the court waive the filing fee and then seek the appointment

22   of counsel.

23             Mr. Smith, any mistakes or problems with the

24   sentence?

25             MR. SMITH:  No, Your Honor.  Thank you.

37

1          THE COURT:  Mr. Stegall, any mistakes or problems

2    with the sentence?

3          MR. STEGALL:  No, Your Honor.

4          THE COURT:  All right.  Anything else, Mr. Smith,

5    in this matter?

6          MR. SMITH:  No, Your Honor.  Thank you for

7    hearing us.

8          THE COURT:  All right.  Mr. Stegall, anything

9    else?

10          MR. STEGALL:  No, not from the defense.

11          THE COURT:  All right.  Mr. Egbowawa, I hope this

12    sinks in.

13          MR. STEGALL:  Are we setting a hearing date for

14    that restitution or --

15          CASE MANAGER:  The Judge just said the

16    determination due by July the 17th.  So if they have

17    something they want to submit and agree upon; if not, we can

18    set a hearing.

19          THE COURT:  All right.  Why don't we just -- if

20    y'all want to work it out before July 17th, fine.  But if

21    there's a disagreement, we can come back around the 17th and

22    we can address the issue then.  Okay?

23          MR. STEGALL:  Very good.

24          THE COURT:  And we'll just send a notice out if

25    need be.  If y'all would -- just keep us posted, if you

UNREDACTED TRANSCRIPT

38

1    would, around the first of July so that we know what we're

2    dealing with.   Okay?

3              MR. SMITH:   Yes, Your Honor.

4              THE COURT:   All right.   Y'all take care.

5              MR. SMITH:   Thank you.

6              CASE MANAGER:   All rise.   This Honorable Court

7    now stands adjourned.

8              (Adjournment at 10:42 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

39

# C E R T I F I C A T E

     I, CATHERINE J. PHILLIPS, Fellow of the Academy of Professional Reporters, Registered Merit Reporter, Certified Manager of Reporting Services, do hereby certify that the foregoing 38 pages are, to the best of my knowledge, skill, and abilities, a true and accurate transcript from my stenotype notes of the SENTENCING on the 17th day of April, 2024, in the matter of:

UNITED STATES Of AMERICA

vs.

EFE EGBOWAWA

Dated this 30th day of April, 2024.

S/ CATHERINE J. PHILLIPS, FAPR, RMR, CMRS
Official Court Reporter
United States District Court
Western District of Tennessee

UNREDACTED TRANSCRIPT